# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RACHEL GNADINGER, MADELINE MCCAUSLAND, and JOANNE NEBUS-HORNING, on behalf of themselves and others similarly situated,

*Plaintiffs*,

v.

ATHENA BITCOIN, INC., MATIAS GOLDENHÖRN, SAM NAZZARO, ERIC GRAVENGAARD, GILBERT VALENTINE, ROUTINE MANAGEMENT LLC D/B/A ONE STOP SHOPPE, JIAH CORP. D/B/A HOLMDEL EXXON, AND JOHN DOE CONVENIENCE STORES,

*Defendants*.

Case No.: 2:25-cv-14063 (ES) (MAH)

Hon. Esther Salas, U.S.D.J.
Hon. Michael A. Hammer, U.S.M.J.

Motion Date: November 17, 2025 (pursuant to Aug. 13, 2025 scheduling order)

---

## ATHENA BITCOIN DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND & FOR JURISDICTIONAL DISCOVERY

Eric R. Fish
**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Phone: (212) 589-4200
Email: efish@bakerlaw.com

*Attorneys for Defendants Athena Bitcoin, Inc., Matias Goldenhörn, Sam Nazzaro, Gilbert Valentine, and Eric Gravengaard*

i

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................1

RELEVANT BACKGROUND ...........................................................................3

ARGUMENT .....................................................................................................7

    I.    Applicable Legal Standard. ..................................................................7

    II.    The Athena Bitcoin Defendants' have met CAFA's class-size requirement, by a preponderance of the evidence, and the Court, therefore, has original jurisdiction over this case. ...............................8

    III.    There is no basis for permitting jurisdictional discovery....................13

CONCLUSION .................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkliss v. Nissan Extended Servs. N.A., Inc.*,
  No. 18-cv-5681, 2018 WL 10502135 (D.N.J. Aug. 16, 2018) .............................. 9

*Callery v. HOP Energy, LLC*,
  620 F. Supp. 3d 223 (E.D. Pa. 2022) .................................................................. 11

*Canseven v. Just Pups, LLC*,
  No. 15-cv-5633, 2015 WL 5455869 (D.N.J. Sept. 16, 2015) ............................. 16

*Coladonato v. Gap, Inc.*,
  No. 17-cv-11998, 2018 WL 4620673 (D.N.J. Sept. 26, 2018) ............................ 9

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014) ......................................................................................... 7, 8

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,
  623 F.3d 147 (3d Cir. 2010) ............................................................................. 14

*Farrell v. FedEx Ground Package Sys., Inc.*,
  478 F. Supp. 3d 536 (D.N.J. 2020) ..................................................................... 9

*Kendall v. CubeSmart L.P.*,
  No. 15-cv-6098, 2015 WL 7306679 (D.N.J. Nov. 19, 2015) ........................... 7, 8

*LaSala v. Marfin Popular Bank Pub. Co.*,
  410 F. App'x 474 (3d Cir. 2011) ....................................................................... 15

*Lee v. Cent. Parking Corp.*,
  No. 15-cv-0454, 2015 WL 4510128 (D.N.J. July 24, 2015) .............................. 16

*Politi v. Boscov's, Inc.*,
  No. 22-cv-1616, 2023 WL 5425342 (D.N.J. Aug. 22, 2023) ............................... 2

*Portillo v. Nat'l Freight, Inc.*,
  169 F. Supp. 3d 585 (D.N.J. 2016) ..................................................................... 9

*Santiago v. Fed. Express Freight, Inc.*,
    No. 14-cv-5081, 2015 WL 6687617 (D.N.J. Oct. 30, 2015) ............................... 16

*Smith v. HSN, Inc.*,
    No. 20-cv-12869, 2020 WL 7022640 (D.N.J. Nov. 30, 2020) ..................... 15, 16

*Thompson v. Travelers Indemnity Co.*,
    No. 23-cv-02630, 2024 WL 340933 (D.N.J. Jan. 30, 2024)........................... 9, 15

**Statutes**

28 U.S.C. § 1332(d) ................................................................................................. 7

28 U.S.C. § 1332(d)(2)(A) ...................................................................................... 5

28 U.S.C. § 1446(a) ............................................................................................. 7, 8

N.J.S.A. 2C:20-20 ................................................................................................... 4

N.J.S.A. 2C:21-25(a) .............................................................................................. 4

**Other Authorities**

S. Rep. No. 109-14 .................................................................................................. 7

## **INTRODUCTION**

Defendants Athena Bitcoin, Inc., Matias Goldenhörn, Sam Nazzaro, Gilbert Valentine, and Eric Gravengaard ("Athena Bitcoin Defendants") respectfully submit this brief in opposition to Plaintiffs' Motion to Remand and for Leave to Conduct Jurisdictional Discovery. (ECF No. 7-1.)

Plaintiffs brought this case as a putative class action in state court claiming that the Athena Bitcoin Defendants should be held liable for a litany of claims because Athena Bitcoin failed to prevent its Bitcoin kiosks from being "regularly and foreseeably" used by third-party criminals in impersonation scams like the ones described in their complaint. (*See generally* ECF #1-1, Class Action Complaint with Jury Demand ("Compl").) Plaintiffs further alleged that this case was properly brought as a putative class action because "[t]he members of the Class for whose benefit this action is brought is [*sic*] so numerous that joinder of all members is impracticable." (*Id.* ¶ 120.)

Upon receiving Plaintiffs' state-court complaint, Athena Bitcoin reviewed its records to determine whether it had good-faith grounds to remove this action under CAFA, confirmed that more than 100 putative class members met Plaintiffs' proposed class definition and that CAFA's other requirements were met, and then removed the case to this Court. (*See generally* ECF No. 1, Athena Bitcoin Defendants' Notice of Removal.)

Plaintiffs do not dispute minimal diversity or amount in controversy. They attack only CAFA's numerosity requirement and do so with nothing but speculation and attorney argument. But speculation is not evidence, and once Defendants submitted competent evidence, the burden shifted to Plaintiffs to rebut CAFA jurisdiction with proof—not conjecture. *Politi v. Boscov's, Inc.*, No. 22-cv-1616, 2023 WL 5425342, at *1-3 (D.N.J. Aug. 22, 2023). They failed to do so.

Now, unhappy that they've landed in federal court, Plaintiffs attempt to recast the narrative of their complaint, arguing that it is "implausible" that there are more than 100 putative class members—despite the sworn declaration of Mr. Nazzaro averring just that—because now, according to Plaintiffs, the transactions described in the class definition are so "highly anomalous" that surely 100 people could not have engaged in such transactions. (*Compare* ECF No. 1-4, Declaration of Sam Nazzaro ("Nazzaro Dec.") ¶ 4 *with* ECF No. 7-1, Plaintiffs' Br. In Support of Motion to Remand ("Mot.") at 1-2.) But they do not argue that the Athena Bitcoin Defendants' Notice of Removal fails to meet any of CAFA's other requirements or is otherwise improper.

Plaintiffs have not provided any evidence supporting their argument that remand is required. Instead, they ask the Court to remand based on their subjective belief that Mr. Nazzaro's declaration seems "implausible" to them based on different set of data in a different case for a different period of time. But the record and

caselaw are clear—Mr. Nazzaro's declaration is sufficient evidence to support the Athena Bitcoin Defendant's Removal, and this Court should retain jurisdiction.

Alternatively, Plaintiffs seek jurisdictional discovery on the number of individuals who meet their class definition. (Mot. at 1.) But Plaintiffs' request for jurisdictional discovery amounts to nothing more than a fishing expedition.

Accordingly, the Court should deny Plaintiffs' Motion to Remand, retain jurisdiction of this case, and deny Plaintiffs' request for jurisdictional discovery.

## RELEVANT BACKGROUND

Plaintiffs allege that they were the targets and victims of "impersonation scams" perpetrated on them by unknown criminals. (Compl. ¶ 2 .) More specifically, Plaintiffs allege that they were contacted by third-party criminals who impersonated tech, financial, or governmental representatives, and that those criminals convinced Plaintiffs to purchase Bitcoin at Athena Bitcoin kiosks in New Jersey and send that Bitcoin to the criminals' digital wallets. (*Id.* ¶¶ 61-69, 78-90, 98-104.) Plaintiffs allege throughout their complaint that the Athena Bitcoin Defendants are aware that Athena Bitcoin's kiosks are "regularly and foreseeably" used in these types of impersonation scams, which Plaintiffs allege have skyrocketed in recent years. (*See generally id.*)

Based on these facts, Plaintiff sued Athena Bitcoin, along with current and former executives of Athena Bitcoin and the stores where the Athena Bitcoin kiosks

were located. (*See* Compl. ¶¶ 21-25.) Plaintiffs assert claims for: (1) violations of New Jersey's Consumer Fraud Act; (2) negligence/gross negligence/recklessness; (3) possession of stolen property, N.J.S.A. 2C:20-20; (4) violations of New Jersey Racketeer Influenced and Corrupt Organizations Act ("RICO") predicated on financial facilitation of criminal activity, N.J.S.A. 2C:21-25(a); and (5) New Jersey RICO predicated on theft of property delivered by mistake. (*See id.* ¶¶ 131-82.) Plaintiffs bring these claims as a putative class action and seek to represent a class defined as:

> Any person who, during the proposed class period, completed a cash-to-Bitcoin transaction at an Athena Bitcoin ATM in New Jersey with a cash purchase price exceeding $9,500 within 14 days after registering the user account used for the transaction, and who, according to Athena Bitcoin, Inc.s [*sic*] records, subsequently reported to Athena, law enforcement, or anyone else, that the transaction was part of an impersonation scam.

> As used in the above class definition, the following terms and phrases have the following meanings:

> "Proposed class period" is the period beginning six years prior to the filing of this Complaint [May 30, 2019] and ending on the date an order certifying the proposed class is entered, if any.

> "Transaction at an Athena Bitcoin ATM in New Jersey with a purchase price exceeding $9,500" includes two or more transactions in a single day with an aggregate purchase price exceeding $9,500, provided all transactions were at Athena Bitcoin ATMs in New Jersey.

"Impersonation scam" means scams of the type generally described under the headings on the Athena Bitcoin website at https://athenabitcoin.com/avoid-these-bitcoin-scams/ (Exhibit A), without limiting the term to the specific companies (Microsoft, Apple, and Google) and details ("pop-up often accompanied by a loud warning sound") used as examples.

(Compl. ¶ 119.)

On August 1, 2025, the Athena Bitcoin Defendants timely removed Plaintiffs' complaint to this Court pursuant to CAFA, 28 U.S.C. § 1332(d)(2)(A). (ECF No. 1.) As shown in the removal papers, CAFA jurisdiction is satisfied because the Complaint was pled as a putative class action, includes over 100 proposed putative class members, involves minimal diversity of citizenship among the parties, and exceeds the aggregate amount in controversy of $5 million, exclusive of interest and costs. (*See generally id.* at 3-4.)

As further support for the allegation that the proposed class includes over 100 individuals, the Athena Bitcoin Defendants attached a declaration by Sam Nazzaro, Athena Bitcoin's current Chief Compliance Officer and Regulatory Counsel, swearing that, based on Athena Bitcoin's records, there are more than 100 accounts that meet Plaintiffs' proposed class definition. (Nazzaro Dec. ¶¶ 2, 4.)

For purposes of this opposition, Plaintiffs themselves concede in their Complaint that Athena "receives numerous reports of [impersonation] fraud per month" related to transactions at its kiosks. (Compl. ¶ 48.) They further allege that

Athena Bitcoin has long known its kiosks are "regularly and foreseeably" used in such scams. (Id. ¶¶ 4-5, 47-49, 55.) Having pled that impersonation scams are common and recurring, Plaintiffs cannot now argue it is "implausible" that at least 100 individuals meet their proposed class definition. Their own allegations directly contradict their motion.

Plaintiffs' motion also relies heavily on a declaration submitted by Mr. Nazzaro in unrelated litigation, *Carew v. Athena Bitcoin, Inc.*, No. 3:25-cv-00608 (D.N.J.), to suggest that Athena Bitcoin had only 1,309 New Jersey customers during a particular period. But *Carew* involved a different plaintiff, a narrower time period, no class allegations, and no analysis of impersonation scam reports, the metric relevant here. In fact, as Defendants stated in response to the *Carew* plaintiff's amended complaint, the *Carew* case was remanded only because the plaintiff voluntarily dismissed the class allegations, not because the court questioned CAFA jurisdiction. (*See Carew*, No. 3:25-cv-00608, ECF No. 18 at 1.) Plaintiffs' reliance on *Carew* is therefore both misplaced and misleading.

Plaintiffs now ask the Court to ignore Mr. Nazzaro's sworn statement and remand this action to state court because they believe it "implausible" that there are at least 100 proposed putative class members. As this Court has held repeatedly, a declaration like Mr. Nazzaro's is sufficient to establish the number of putative class

members, by a preponderance of the evidence. Alternatively, and without legitimate justification, Plaintiffs seek jurisdictional discovery.

## ARGUMENT

### I. Applicable Legal Standard.

CAFA provides a district court with original jurisdiction over any class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of any defendant. 28 U.S.C. § 1332(d). Because Congress enacted CAFA "to facilitate adjudication of certain class actions in federal court," "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Instead, CAFA "should be read broadly, with a strong preference that interstate class actions [] be heard in a federal court if properly removed by any defendant." *Id.* (quoting S. REP. No. 109-14, at 43 (2005)).

A defendant's notice of removal need include only "a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 87 (quoting 28 U.S.C. § 1446(a)). "When the sufficiency of the jurisdictional allegations in a notice of removal is challenged, the parties must submit proofs for the court to decide, by a preponderance of the evidence, whether the jurisdictional requirements are satisfied." *Kendall v. CubeSmart L.P.*, No. 15-cv-6098, 2015 WL 7306679, at *2

(D.N.J. Nov. 19, 2015) (citing *Dart Cherokee*, 574 U.S. at 88). The Athena Bitcoin Defendants already have shown by a preponderance of the evidence that their Notice of Removal meets CAFA's class-member requirements, and thus this Court should deny Plaintiffs' Motion to Remand and retain jurisdiction.

## II.    The Athena Bitcoin Defendants have met CAFA's class-size requirement, by a preponderance of the evidence, and the Court, therefore, has original jurisdiction over this case.

All that is required to meet CAFA's jurisdictional requirements is a "short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 87 (quoting 28 U.S.C. § 1446(a)). The Athena Bitcoin Defendants met that burden in their Notice of Removal. (*See* ECF No. 1.)

But, anticipating that Plaintiffs' counsel may seek to remand, as they have done previously in related litigation, the Athena Bitcoin Defendants also attached to their Notice of Removal evidence in support of their allegation that there are at least 100 putative class members that fit Plaintiffs' class definition—a sworn declaration from Sam Nazzaro, Athena Bitcoin's current Chief Compliance Officer and Regulatory Counsel. (Nazzaro Dec. ¶ 4.) That declaration establishes, by a preponderance of the evidence, that there are at least 100 class members, as required by CAFA. *See, e.g., Kendall*, 2015 WL 7306679 at *3 (denying motion to remand and finding CAFA's class-size was met where the defendant submitted a declaration averring the number of class members exceeded 100); *Portillo v. Nat'l Freight, Inc.*,

169 F. Supp. 3d 585, 597 (D.N.J. 2016) (denying motion to remand and explaining that the objective and factual grounds in defendants' declaration "easily me[]t their burden of establishing the [CAFA requirement] by a preponderance of the evidence."); *Coladonato v. Gap, Inc.*, No. 17-cv-11998, 2018 WL 4620673, at *3 (D.N.J. Sept. 26, 2018) (finding, by a preponderance of the evidence, that a sworn statement from senior official of defendant met CAFA's jurisdictional requirements, despite plaintiff's arguments); *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 539, 542 (D.N.J. 2020) (defendant's estimate of damages, supported by sworn affidavits, were sufficient to establish jurisdiction and denying remand); *Thompson v. Travelers Indemnity Co.*, No. 23-cv-02630, 2024 WL 340933, at *3 (D.N.J. Jan. 30, 2024) ("Based on the Lynch Declaration, the Court finds that Defendants have shown, by the required preponderance of the evidence, that the number of claimants would [be] greater than or equal to one hundred. Accordingly, the Court finds that this element of CAFA jurisdiction is met."); *Arkliss v. Nissan Extended Servs. N.A., Inc.*, No. 18-cv-5681, 2018 WL 10502135, at *2-3 (D.N.J. Aug. 16, 2018) (finding jurisdiction requirement met, by a preponderance of the evidence, based on plaintiff's own allegations and "objective, sworn facts" from defendant's certification).

Without submitting any contrary evidence, Plaintiffs ask this Court to ignore Mr. Nazzaro's sworn testimony and this Court's precedent based on their speculation

that it is implausible that more than 100 individuals meet their class definition. The only fact (as opposed to unproven allegations) that Plaintiffs point to in support of their claim of implausibility is a declaration in support of removal that Athena Bitcoin submitted in January of this year in a separate case, stating that from November 25, 2018 to January 13, 2025, the total number of individuals that had purchased Bitcoin from an Athena Bitcoin kiosk in New Jersey was 1,309. (Mot. at 4, 12.) But Plaintiffs' position misses the mark.

First, Plaintiffs mischaracterize the information they rely on and disregard the thrust of their entire complaint. The class period in this case is from May 30, 2019 to present. (Compl. ¶ 119.) As Mr. Nazzaro's declaration makes clear, the data that he reviewed as part of making his sworn statement in this case included records from May 30, 2019 through August 1, 2025. (Nazzaro Dec. ¶ 4.) The period of time covered by Mr. Nazzaro's January declaration is from November 25, 2018 to January 13, 2025. (Mot. at 4.) Thus, there are two different sets of data between Mr. Nazzaro's January declaration and his August declaration, and those numbers cannot be considered apples-to-apples as Plaintiffs urge.

Second, even if Plaintiffs were correct that only 1,309 total individuals used Athena Bitcoin's kiosks in New Jersey during the relevant period (they are not), Plaintiffs have still presented no reason that the Court should ignore Mr. Nazzaro's declaration that more than 100 of those individuals—as little as 8 percent—are

potential members of the putative class. Plaintiffs' own complaint repeatedly alleges that Athena Bitcoin's kiosks are "regularly and foreseeably" used by third-party criminals in scams against the public, that these scams have "skyrocketed" in recent years, and that Athena Bitcoin warns the public about such scams and tracks numerous reports of fraud each month. (*See generally* Compl. ¶¶ 4-5, 47-49, 55.) Thus, based on their own allegations, there is nothing implausible about 100 individuals falling victim to the scams detailed by Plaintiffs over more than six years.[1]

Plaintiffs also attempt to distort Mr. Nazzaro's sworn statement. Plaintiffs first take issue with Mr. Nazzaro's description of his knowledge of the facts in the declaration. (Mot. at 13.) But he clearly avers that he has worked at Athena Bitcoin as the Chief Compliance Officer and Regulatory Counsel since 2021 and has knowledge of the matters in his declaration. (Nazzaro Dec. ¶¶ 2-3.)

Next, Plaintiffs complain that the declaration does not detail or append the records he reviewed as part of his declaration. (Mot. at 14.) Plaintiffs do not identify any authority requiring such detail, and the Athena Bitcoin Defendants know of none. More importantly, Plaintiffs' suggestion that the data reviewed by Mr. Nazzaro should be appended to his declaration overlooks that the data within Athena

---

[1]   The Athena Bitcoin Defendants do not concede any of these alleged facts. *See Callery v. HOP Energy, LLC*, 620 F. Supp. 3d 223, 227 (E.D. Pa. 2022) (Defendants "do not need to concede liability to establish federal jurisdiction.").

Bitcoin's systems contains confidential and personally identifiable information of individuals, who have not consented to be part of this action nor to have their information exchanged with Plaintiffs or posted publicly.

Plaintiffs' next attack is that the language used in Mr. Nazzaro's declaration is not the exact language used in Plaintiffs' proposed class definition. (Mot. at 14-15.) But Plaintiffs' quibbles are immaterial. To ensure that the declaration accurately reflected the data as kept by Athena Bitcoin in its ordinary course, the declaration uses language regarding information that is actually tracked by the company, as opposed to that used by Plaintiffs. Thus, the declaration uses the term "unique accounts" rather than "persons" because Athena Bitcoin tracks data within its systems by "unique accounts" rather than "persons." But unique accounts correlate to individuals, and, as such, the Notice of Removal indicates that the proposed class definition includes over 100 putative members—the requirement for CAFA. (ECF No. 1 at 4.)

Plaintiffs also claim Mr. Nazzaro's declaration is insufficient because the proposed class definition is limited to "impersonation scams." (Mot. at 14-15.) Again, "impersonation scams" is not a metric tracked within Athena Bitcoin's data that can be queried. Instead, the declaration references reports of fraud related to cash-to-Bitcoin transactions at Athena Bitcoin's kiosks—the way that the data is tracked within Athena Bitcoin. (Nazzaro Dec. ¶ 4.) But more importantly, the

declaration's language  about reports of fraud does fit within the definition of "impersonation scams." As Plaintiffs' definition of "impersonation scams" shows, the term "impersonation scam" is not limited in any meaningful way, contrary to what Plaintiffs now contend. Instead, the Complaint defines "impersonation scam" by referencing Athena Bitcoin's webpage, which itself discusses more than 10 types of fraud, and by specifically noting that the defined term is not limiting the definition to any specific companies or details used as examples on Athena Bitcoin's webpage. (Compl. ¶ 119.) As such, the declaration's fraud reports fit within the definition of "impersonation scam." Thus, the Athena Bitcoin Defendants have established CAFA jurisdiction.

## III.    There is no basis for permitting jurisdictional discovery.

As an alternative to their Motion to Remand, Plaintiffs ask the Court to allow them to engage in  jurisdictional discovery regarding the number of persons that meet their proposed class definition. (Mot. 1, 15.) Specifically, they ask the Court to depose Mr. Nazzaro about his review of Athena Bitcoin's data and to issue document requests related to that data. (*Id.* at 15.)

Though courts may permit jurisdictional discovery, "[a] plaintiff may not [] undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*,

623 F.3d 147, 157 (3d Cir. 2010). A fishing expedition is precisely what Plaintiffs propose here.

The Athena Bitcoin Defendants have already reviewed Athena Bitcoin's data, found that there are more than 100 putative class members that meet Plaintiffs' definition, and submitted a sworn testimony to that effect. As explained above, that declaration establishes, by a preponderance of the evidence, that there are at least 100 class members, and this Court has jurisdiction. Because Plaintiffs offer no reason to question that testimony, jurisdictional discovery is neither necessary nor appropriate here.

The only remaining purpose of discovery at this point would be for Plaintiffs to gain access to data to which they are not entitled at this juncture. But that is not a proper use of jurisdictional discovery. Having litigated multiple cases against Athena Bitcoin in various jurisdictions, Plaintiffs are surely aware that as soon as this jurisdiction fight is over, the Athena Bitcoin Defendants intend to file motions to compel two of the named plaintiffs to arbitration under applicable Terms of Service and a substantive motion to dismiss the claims as to the remaining plaintiff. Plaintiffs' request for jurisdictional discovery is thus an improper attempt to seek confidential information on putative class members and details of Athena Bitcoin's dealings to gain information for use against Athena Bitcoin before this Court has a chance to rule on whether Plaintiffs have properly stated a claim. Such

gamesmanship does not justify jurisdictional discovery. *See LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 479 (3d Cir. 2011) (holding request for jurisdictional discovery could only "be described as anything other than a fishing expedition" and, as such, was properly denied by the district court).

Nor do the cases relied upon by Plaintiffs support their claim for jurisdictional discovery here. None of the cases that Plaintiffs cite permitted a party to conduct jurisdictional discovery on the number of putative class members after a defendant submitted a sworn statement regarding the number of potential class members. In fact, in two of the cases cited by Plaintiffs, the Court accepted a declaration submitted by the defendant as sufficient evidence to establish the class size and required no more information. *See Thompson,* 2024 WL 340933 at *3 (finding defendant's declaration from individual "who reviewed Defendants' business records" showed, by the preponderance of the evidence, that there were 100 or more putative class members); *Smith v. HSN, Inc.*, No. 20-cv-12869, 2020 WL 7022640, at *4 (D.N.J. Nov. 30, 2020) (finding estimate that 20,000 units were sold in New Jersey as set forth in defendant's declaration was sufficient to establish the requirement of 100 putative class members was met).

To the extent that the cases relied upon by Plaintiffs permitted jurisdictional discovery, the facts were distinct from those here: (1) there was an open question either about the calculation of damages or the citizenship of plaintiffs or defendants,

such that certain mandatory CAFA exceptions might apply or complete diversity would be defeated; and (2) there were no facts in the record on these open questions such that the Court could determine whether it had jurisdiction. *See, e.g., Lee v. Cent. Parking Corp.*, No. 15-cv-0454, 2015 WL 4510128, at *1 (D.N.J. July 24, 2015); *Smith*, 2020 WL 7022640 at *4-7; *Santiago v. Fed. Express Freight, Inc.*, No. 14-cv-5081, 2015 WL 6687617, at *2-3 (D.N.J. Oct. 30, 2015); *Canseven v. Just Pups, LLC*, No. 15-cv-5633, 2015 WL 5455869, at *2-3 (D.N.J. Sept. 16, 2015). But here there is evidence in the record, through Mr. Nazzaro's declaration, that affirmatively establishes the class-size requirement has been met. Thus, jurisdictional discovery related to the number of individuals that meet Plaintiffs' class definition is improper.

Plaintiffs already have the one piece of information they claim to need, the number of putative class members, which is provided in Mr. Nazzaro's sworn declaration. They do not dispute it with evidence. They simply want to cross-examine Defendants' witness and obtain records, which confirms their true objective is to obtain premature merits discovery, not jurisdictional clarification. That is impermissible. Because Plaintiffs have failed to (1) identify any factual dispute relevant to jurisdiction, (2) explain why the existing declaration is insufficient, or (3) offer any evidence contradicting it, their request for discovery must be denied.

Plaintiffs have offered no evidence to rebut CAFA jurisdiction and rely only on speculation and disagreement with Defendants' sworn evidence. That is

insufficient as a matter of law. Because Defendants have established CAFA jurisdiction by a preponderance of the evidence and Plaintiffs have not shown otherwise, remand is improper.

## CONCLUSION

For the foregoing reasons, the Athena Bitcoin Defendants respectfully request that this Court deny Plaintiffs' Motion to Remand, deny Plaintiffs' request for jurisdictional discovery, and retain jurisdiction over this case.

Dated: October 15, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    */s/ Eric R. Fish*
       Eric R. Fish
       Kamille E. Perry
       45 Rockefeller Plaza
       New York, New York 10111
       Phone: (212) 589-4200
       Fax: (212) 589-4201
       Email: efish@bakerlaw.com
       Email: kperry@bakerlaw.com

       *Attorneys for Athena Bitcoin,*
       *Inc., Matias Goldenhörn, Sam*
       *Nazzaro, Eric Gravengaard, and*
       *Gilbert Valentine*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2025, a true and correct copy of the foregoing was electronically filed via ECF and was therefore served on all counsel of record.

<u>*/s/ Eric R. Fish*</u>
Eric R. Fish